IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

2024 NOV -4  PM 2: 02

CLERK-ALBUQUERQUE

**CARLOS MATURIN,**
                    **Plaintiff,**

**vs.**                                          **Case No.**     24cv1125-SCY

**T-MOBILE USA, INC.,**
                    **Defendant.**

## COMPLAINT FOR DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, RETALIATION, HOSTILE WORK ENVIRONMENT, CONSTRUCTIVE DISCHARGE UNDER THE ADA, AND INTERFERENCE AND RETALIATION UNDER THE FMLA

Plaintiff Carlos Maturin brings this action against T-Mobile USA, Inc. ("Defendant"), alleging violations of the Americans with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA). Defendant's retaliatory and discriminatory conduct include discrimination based on disability, failure to accommodate, retaliation, creation of a hostile work environment and constructive discharge under the ADA, as well as interference with the Plaintiff's rights and retaliation under the FMLA. Defendant's retaliatory and discriminatory conduct includes forcibly placing Plaintiff on continuous leave without justification, selectively enforcing company policies, and recklessly disregarding Plaintiff's healthcare provider's professional recommendations, In violation of the ADA's and FMLA's anti-discrimination and anti-retaliation provisions. As a result of Defendant's actions, Plaintiff has suffered severe emotional distress, mental anguish, financial instability, and diminished future earning capacity. Plaintiff seeks compensatory damages, punitive damages, and equitable relief, with a focus on monetary compensation for the substantial damages incurred.

### INTRODUCTION

1.  Plaintiff Carlos Maturin has been a pillar of excellence at T-Mobile USA, Inc. for nearly

2

a decade, contributing significantly to the Albuquerque Menaul Call Center's success and national standing. Starting his career with T-Mobile in July 2013, Carlos's dedication and performance quickly distinguished him, earning him the Retail Support Line Most Valuable Player (RSL MVP) title for four consecutive years, 2013 to 2017. Recognizing his impact, T-Mobile promoted Carlos to Senior Representative in 2017. In the company's words:

> "Swoosh! Congrats Carlos on your promotion to Senior! Carlos has been an RSL MVP for 4 years. He's been selected multiple times to support our new hire training classes...Carlos is a back-to-back IN CROWD achiever and was the #1 RSL Rep in 2016 and #2 Rep in 2015. He's also received Resolution Rock Star recognition from Callie Field!" (June 30, 2017, T-Mobile email).

2. This public acknowledgment, displayed throughout the Menaul site, emphasized Carlos's contributions and his role in helping Menaul reach #1 national ranking. T-Mobile's management attributed this accomplishment to the "dedication and leadership of Carlos Maturin and other top performers," highlighting his essential influence in advancing team metrics, customer satisfaction, and performance.

3. Carlos's accolades continued as his work was celebrated with the InCrowd Awards in 2016 and 2017 for his "best in site" performance. T-Mobile also awarded Carlos the Resolution Rock Star recognition from Senior Executive Callie Field, an honor received by only a few employees. Building on these successes, T-Mobile promoted Carlos to Coach in 2019, where he led his team to outstanding metrics. His leadership abilities culminated in multiple Peak Achievement Award nominations in 2021, T-Mobile's highest honor.

4. Carlos's influence extended to Diversity, Equity, and Inclusion (DE&I) initiatives, where he played a significant role in Special Olympics, wheelchair basketball tournaments, and even led a Cancer Walk in November 2020. These contributions, motivated by Carlos's personal experience with disability, underscored his alignment with T-Mobile's core values and his commitment to creating an inclusive workplace.

5. Despite his remarkable record, Carlos's workplace environment changed dramatically after his May 2022 request for intermittent FMLA leave to manage his record of disability. While initially approved, this request triggered a series of discriminatory and retaliatory actions by T-Mobile, including an unlawful conversion to continuous leave without Carlos's consent on July 15, 2022 constituted discriminatory retaliation. Carlos's request for reinstatement of his original intermittent leave schedule was disregarded, despite the ADA's mandate to follow a meaningful interactive process and reasonable accommodations 42 U.S. Code § 12101.

6. The retaliatory actions intensified with a Performance Improvement Plan (PIP) issued on October 6, 2022, issued in retaliation following Carlos's September 1, 2022, request for increased accommodations due to visible health deterioration, Signed by Manager Katye Minge and Acting Director Jason Lachioma, this PIP cited unsubstantiated performance issues, establishing a retaliatory pretext.

7. The hostile environment escalated further on November 16, 2022, when T-Mobile's willful failure to engage in a meaningful interactive process, pressured forced relocation to Kingsburg, California under threat of termination, despite Carlos's doctor's revised recommendation of long-term disability accommodations. This relocation, structured as an accommodation increased workplace hostility, strain and formed the basis of Carlos's

constructive discharge claim. By January 2024, T-Mobile's actions under the ADA and FMLA highlight a pattern of discriminatory and retaliatory conduct, flagrantly refusing to engage in a meaningful interactive process underscores bad faith. T-Mobile failed to meet his accommodations left Carlos with no option but to resign, completing a systematic pattern of adverse actions.

8. Throughout this process, T-Mobile displayed a systemic disregard for ADA and FMLA protections, also considered contrary to New Mexico's human rights policies, marked by bad-faith interactions and selective internal policy enforcement. The company's lack of following multiple internal policies include the Employee Handbook that states there will be no "Discrimination, Harassment or Retaliation" against employees after approved accommodations, T-Mobile's Leave Of Absence Policy 5.4 " When medically necessary" and " In one continuous block of time that exceeds one full work week", and T-Nation Bereavement Policy that does not include friends. T-Mobile willfully made excessive accommodations for the non-disabled employees compared to disabled employees.

9. Carlos Maturin files this complaint to seek redress for T-Mobile's violations of ADA, and FMLA provisions, pursuing accountability for its unlawful actions and affirming the right to equitable treatment under federal and state laws.

## JURISDICTION AND VENUE

### Jurisdiction

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (based on claims arising under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq.)

### Venue

11. Venue is proper in the District of New Mexico under 28 U.S.C. § 1391(b) because T-Mobile USA, Inc. conducts business within this district, and a substantial part of the events or omissions giving rise to the claims occurred within this judicial district. Specifically, the discriminatory, retaliatory, and adverse employment actions central to this complaint occurred at the Albuquerque Menaul Call Center in Albuquerque, New Mexico, where Plaintiff was employed.

### Exhaustion of Administrative Remedies

12. Plaintiff has exhausted all administrative prerequisites prior to filing this lawsuit. Plaintiff timely filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) received a Notice of Right to Sue on August 6, 2024 and has initiated this action within the time frame permitted by law.

### PARTIES

**Plaintiff:**

13. Plaintiff Carlos Maturin is an individual residing in Bernalillo County, New Mexico. At all relevant times, Plaintiff was employed by T-Mobile USA, Inc. at the Albuquerque Menaul Call Center, where he held various positions of increasing responsibility due to his exemplary performance. Plaintiff is an individual with a disability as defined by the ADA, and his employment was unlawfully affected by discriminatory and retaliatory conduct on the part of Defendant.

**Defendant:**

14. Defendant T-Mobile USA, Inc. is a national telecommunications corporation, incorporated in the state of Delaware, with its principal place of business located in Bellevue, Washington. Defendant is authorized to conduct business within the state of

6

New Mexico, with a significant business presence in Albuquerque, including the Menaul
Call Center where Plaintiff was employed.

## FACTUAL ALLEGATIONS

### Medical Condition and Request for FMLA Leave

15. Plaintiff's chronic condition qualifies as a disability under the ADA. Plaintiff has a well-
    documented history of this condition, which substantially limits his ability to perform
    major life functions without accommodation.

16. On May 17, 2022, Plaintiff Carlos Maturin in remission experienced a severe flare-up of
    his chronic life-long condition, necessitating immediate medical intervention. Following
    his healthcare provider's recommendation, Carlos requested intermittent FMLA leave to
    manage his condition.

17. This request was approved by T-Mobile on June 6, 2022, and allowed up to three
    absences per week, each lasting up to eight hours.

18. As documented, Carlos's chronic life-long condition qualified as a disability under the
    ADA due to its substantial limitation on his ability to perform essential job functions
    without accommodation.

### Initial Discriminatory Actions

19. Despite Carlos's documented approval for intermittent leave, T-Mobile swiftly displayed
    signs of discriminatory intent. T-Mobile disregarded several of Carlos's approved
    absences—including June 27, June 28, July 5, July 6, July 7, and July 8, 2022—and
    neglected to account for PTO days on July 1 and July 4.

20. T-Mobile claimed that Carlos had exceeded his leave limits, then converted his
    intermittent leave to continuous leave on July 15, 2022, effectively barring him from the

workplace.

21. On July 15, 2022 Plaintiff reached out to Broadspire, the third-party administrator, to clarify that he had not requested continuous leave.

22. This unlawful conversion of leave status disregarded T-Mobile's obligations under LOA Policy Section 5.4, which supports Plaintiff's request for intermittent leave as medically necessary, and violated ADA requirements for an interactive process.

23. This conversion disregarded Plaintiff's established needs and reflects T-Mobile's failure to adhere to both its own policies and ADA's and FMLA' anti-discrimination and anti-retaliation provisions.

24. This shift followed closely Plaintiff's request for reasonable accommodations and occurred in conjunction with his documented health challenges.

25. The proximity and timing of these actions demonstrates a serious of adverse employment responses following Plaintiff's engagement in protected activities, constituting a pattern that is inconsistent with T-Mobile's obligations under the ADA.

**Escalation of Hostility and Retaliatory Actions by Management**

26. In response to Carlos's worsening health, his healthcare provider updated the recommendation on September 1, 2022, advising four days of intermittent leave per week.

27. Rather than accommodate this medical necessity, T-Mobile willfully denied the request, approving only one day per week.

28. This refusal compounded the hostile environment and worsened Carlos's health, ultimately prompting his doctor to recommend long-term disability as a safeguard.

**Retaliatory Performance Improvement Plan (PIP)**

29. Just over a month later, on October 6, 2022, T-Mobile issued Carlos a retaliatory PIP under the guise of a "Formal Discussion." This retaliatory PIP, signed by Katye Minge, Carlos's new manager as of June 26, 2022, and Acting Site Director Jason Lachioma, was issued immediately after Carlos's updated accommodation request, underscoring a pattern of retaliatory pretext.

30. This Retaliatory PIP marked a significant difference following Carlos's exceptional 2021 performance under Manager Veronica Vigil, who was suddenly removed from Carlos's team in June 2022 without explanation, replaced by Katye Minge. The timing of Katye Minge's managerial role and the issuance of the Retaliatory PIP following Carlos's request for increased leave directly links his protected activity to T-Mobile's adverse actions, evidencing retaliation.

### Forced Relocation and Constructive Discharge

31. On November 16, 2022, Defendant escalated its retaliatory measures by pressuring Plaintiff to accept a one-year relocation to Kingsburg, California under threat of job termination. Scheduled to begin in January 2023, this forced relocation ignored Carlos's medical needs and the recommendation from Plaintiff's healthcare provider for accommodations, including long-term disability arrangements, to address his chronic health challenges.

32. Rather than follow a meaningful interactive process, Plaintiff's transfer imposed a heightened burden on him, intensifying workplace stress and aggravating his medical condition. representing a willful effort to force Plaintiff into constructive discharge.

33. The combination of coerced relocation, retaliatory reprimands, and denial of accommodations exemplifies T-Mobile's intentional and hostile conduct, directly

targeting Plaintiff for asserting his ADA rights.

34. T-Mobile's repeated refusal to engage in a meaningful interactive process, as required under the ADA, underscores its lack of good faith. By unilaterally imposing a relocation without any consideration of alternative accommodations, T-Mobile's actions reflect a systemic disregard for the ADA's accommodation obligations and the company's own Employee Handbook, which affirms a commitment to non-retaliation.

**Selective Enforcement of Company Policies and Disparate Treatment of Disabled vs. Non-Disabled Employees**

35. T-Mobile's selective enforcement of policies disproportionately disadvantaged Carlos and other disabled employees while extending preferential treatment to non-disabled counterparts.

**Robert Bledsoe:**

36. In contrast, non-disabled employee Robert Bledsoe received lenient treatment despite violating T-Mobile's bereavement policy. In February 2023, Robert took nearly three weeks off following the death of a friend, a relationship not covered under T-Nation Bereavement Policy, which restricts bereavement leave to immediate family. Rather than enforcing its policy, T-Mobile extended exceptional out of policy accommodations, including a company-paid Motel 6 stay, arranged by Kingsburg Site Director Daniel Dorshell. This stark disparity in policy enforcement underscores T-Mobile's selective treatment of employees based on disability status.

**Timeline of Retaliatory Animus and Adverse Actions**

a. The adverse actions taken by T-Mobile in close proximity to Carlos's accommodation requests reveal a systematic retaliatory intent.

10

b.  June 6, 2022: Initial intermittent leave approved.

c.  June 26, 2022: Carlos's previous manager, Veronica Vigil, is replaced by Katye
    Minge, coinciding with escalated retaliation.

d.  July 15, 2022: Unlawful conversion of intermittent leave to continuous without
    Carlos's consent.

e.  September 1, 2022: T-Mobile denies healthcare provider's recommendation for
    four days per week.

f.  October 6, 2022: Retaliatory PIP issued post-accommodation request, signed by
    Katye Minge and approved by Jason Lachioma.

g.  October 24, 2022: T-Mobile restricts leave approval to one day per week,
    worsening Plaintiff's condition.

h.  November 16, 2022: Forced relocation to Kingsburg, CA, under threat of job loss.

i.  December 2, 2022: Plaintiff applies for long-term disability, per his doctor's
    recommendation.

j.  January 2023: Long-term disability denied; Plaintiff enters Kingsburg role under
    adverse conditions.

k.  This timeline substantiates T-Mobile's systematic retaliation against Plaintiff
    following his request for accommodations.

### Human Resource Investigation and Constructive Discharge

37. Following the October 6, 2022 Retaliatory PIP, Carlos escalated his concerns to Human
    Resources (HR), citing discrimination and retaliation. HR deferred action until 2023, "T-
    Mobile concluded that his concerns were unsubstantiated". T-Mobile's HR department
    showed ignorance of ADA-related grievances. The lack of timely and substantive

investigation forced Mr. Maturin toward constructive discharge.

38. This lack of HR accountability, as illustrated in T-Mobile's Employee Handbook, contravenes stated commitments to a discrimination-free workplace and reinforces the hostile environment Plaintiff faced.

**Unlawful Conversion of Leave and Workplace Exclusion**

39. In its EEOC response, T-Mobile cited LOA Policy Section 5.4 and it's Employee Handbook non-retaliation sections to justify Plaintiff's leave conversion. However, these policies explicitly endorse intermittent leave when medically substantiated, directly contradicting T-Mobile's actions.

40. Employee Handbook Non-Retaliation Promise: T-Mobile's handbook assures a workplace free from discrimination, retaliation, and harassment, explicitly supporting employees who assert legal rights. T-Mobile's unlawful conversion of Plaintiff's leave status, Retaliatory PIPs, and forced relocation violated these assurances, demonstrating bad faith in violation of the ADA's and FMLA's anti-discrimination and anti-retaliation provisions.

**T-Nation Bereavement Policy Violation**

41. Per T-Mobile's bereavement policy, leave is reserved for immediate family. Robert Bledsoe's extensive bereavement accommodations underscore T-Mobile's selective policy enforcement, disadvantaging Plaintiff as a disabled employee.

**COUNT I**
**Disability Discrimination under the ADA**
**42 .S.C. § 12112**

42. All paragraphs of this Complaint are fully incorporated herein.

43. The ADA prohibits discrimination against qualified individuals on the basis of disability,

including the failure to engage and provide reasonable accommodations that enable an individual to perform essential job functions.

44. Plaintiff Carlos Maturin was a qualified individual with a disability, as his chronic, lifelong medical condition substantially limited major life activities.

45. Plaintiff was qualified to perform his job. T-Mobile hired Plaintiff based on his qualifications and, at all times, Plaintiff demonstrated his ability to perform the job functions.

46. Plaintiff requested reasonable accommodations to manage his condition, including intermittent FMLA leave as recommended by his healthcare provider.

47. Defendant T-Mobile discriminated against Plaintiff by:

   a.   a. Failing to honor Plaintiff's intermittent leave request and instead converting it to continuous leave without his consent.

   b.   b. Ignoring Plaintiff's objections and failing to engage in a good-faith interactive process to explore reasonable accommodations.

   c.   c. Denying additional accommodations requested by Plaintiff due to his worsening health condition.

48. As a result of Defendant's discriminatory actions, Plaintiff suffered severe emotional distress, financial instability, and ongoing health deterioration.

**COUNT II**
**ADA Retaliation**
**42 .S.C. § 12203**

49. All paragraphs of this Complaint are fully incorporated herein.

50. The ADA prohibits employers from retaliating against individuals who engage in protected activity, including opposing discriminatory practices or requesting

accommodations.

51. Plaintiff Carlos Maturin engaged in protected activity when he:

    a.  Requested reasonable accommodations under the ADA to manage his disability.

    b.  Objected to Defendant's unlawful conversion of his intermittent leave to continuous leave.

    c.  Requested additional accommodations due to his worsening health condition.

52. Plaintiff suffered adverse employment actions when:

    a.  T-Mobile issued a retaliatory Performance Improvement Plan (PIP) following Plaintiff's accommodation requests.

    b.  T-Mobile denied Plaintiff's requests for additional accommodations after his health deteriorated.

    c.  T-Mobile imposed a forced relocation under the threat of termination, exacerbating Plaintiff's medical condition and leading to constructive discharge.

53. As a direct result of Defendant's retaliation, Plaintiff experienced emotional distress, financial instability, and diminished career opportunities.

54. T-Mobile is liable to Carlos for damages that he suffered as a result of T-Mobile's unlawful actions, including compensatory and punitive damages and front/back pay.

**COUNT III**
**Hostile Work Environment under the ADA**
**42 .S.C. § 12112**

55. All paragraphs of this Complaint are fully incorporated herein.

56. The ADA prohibits employers from creating a hostile work environment based on disability, which includes ongoing discriminatory and retaliatory actions against disabled individuals.

57. Plaintiff's disability and requests for accommodation subjected him to a hostile work environment, as Defendant:

    a.  a. Consistently disregarded his approved accommodations and altered his leave status without consent.

    b.  b. Issued a retaliatory PIP and denied additional accommodations requested for his deteriorating health.

    c.  c. Imposed a forced relocation, despite knowing Plaintiff's medical limitations, creating intolerable working conditions.

58. Defendant's actions were pervasive and severe, significantly impacting Plaintiff's ability to work and contributing to his constructive discharge.

59. As a result of the hostile work environment, Plaintiff experienced emotional distress, health deterioration, and lost wages.

60. T-Mobile is liable to Carlos for damages that he suffered as a result of T-Mobile's unlawful actions, including compensatory and punitive damages and front/back pay.

**COUNT IV**
**Interference under the FMLA**
**29 .S.C. § 2615(a)(1)**

61. All paragraphs of this Complaint are fully incorporated herein.

62. The FMLA prohibits employers from interfering with an employee's right to take leave for qualifying medical reasons.

63. Plaintiff was entitled to intermittent FMLA leave to manage his chronic, lifelong condition as approved by Defendant.

64. Defendant interfered with Plaintiff's FMLA rights by:

    a.  Unlawfully converting Plaintiff's intermittent leave to continuous leave without

his consent.

b. Failing to account for Plaintiff's approved leave days, thereby falsely claiming he exceeded his leave limits.

c. Creating obstacles to Plaintiff's exercise of FMLA rights by enforcing discriminatory attendance policies.

65. As a direct result of Defendant's interference, Plaintiff suffered emotional distress, lost wages, and was ultimately forced to resign due to ongoing hostile conditions.

66. T-Mobile is liable to Carlos for damages that he suffered as a result of T-Mobile's unlawful actions, including front and back pay and liquidated damages.

## COUNT V
### Retaliation under the FMLA
### 29 .S.C. § 2615(a)(2)

67. All paragraphs of this Complaint are fully incorporated herein.

68. The FMLA prohibits employers from retaliating against employees for exercising their right to take medical leave.

69. Plaintiff engaged in protected activity by requesting and taking FMLA leave to manage his chronic, lifelong condition.

70. Plaintiff suffered adverse employment actions when:

a. Defendant issued a retaliatory PIP immediately following Plaintiff's requests for FMLA leave.

b. Defendant imposed a forced relocation under the threat of termination, creating undue stress and exacerbating Plaintiff's health condition.

c. Defendant denied Plaintiff's requests for additional accommodations after his health worsened, contributing to Plaintiff's constructive discharge.

16

71. As a result of Defendant's retaliatory actions, Plaintiff experienced emotional distress, financial instability, and career harm.

72. T-Mobile is liable to Carlos for damages that he suffered as a result of T-Mobile's unlawful actions, including front and back pay and liquidated damages.

## COUNT VI
### Constructive Discharge under the ADA
### 42       .S.C. § 12112(a)

73. All paragraphs of this Complaint are fully incorporated herein.

74. Constructive discharge occurs when an employer creates intolerable working conditions that effectively force an employee to resign.

75. Defendant T-Mobile's actions created intolerable working conditions for Plaintiff by:

   a.  Ignoring his accommodation requests and converting his leave without consent.

   b.  Subjecting him to retaliatory PIPs and forced relocation.

   c.  Refusing to engage in a good-faith interactive process to explore alternative accommodations.

76. Plaintiff had no reasonable option but to resign due to the hostile and discriminatory environment maintained by Defendant.

77. As a result of the constructive discharge, Plaintiff has suffered emotional distress, financial losses, and career setbacks.

78. T-Mobile is liable to Carlos for damages that he suffered as a result of T-Mobile's unlawful actions, including compensatory and punitive damages and front/back pay.

## COUNT VII
### Failure to Engage in the Interactive Process under the Americans with Disabilities Act (ADA)
### 42 U.S.C. § 12112(b)(5)(A)

79. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth

herein.

80. Under the ADA, employers are required to engage in a timely, good-faith interactive process to determine effective reasonable accommodations for employees with disabilities who request accommodations or who are known to require them.

81. Plaintiff Carlos Maturin is a qualified individual with a disability as defined by the ADA.

82. Plaintiff was qualified to perform the essential functions of his job.

83. Plaintiff notified Defendant T-Mobile USA, Inc. of his need for reasonable accommodations, including intermittent leave to manage his medical condition, as recommended by his healthcare provider.

84. Despite this notification, Defendant failed to engage in a good-faith interactive process with Plaintiff to explore effective accommodations. Instead, Defendant unilaterally converted Plaintiff's approved intermittent leave to continuous leave without Plaintiff's consent or proper justification.

85. Defendant's failure to engage in a meaningful interactive process under the ADA continued when Plaintiff requested additional leave based on worsening health conditions in September 2022. Rather than discussing reasonable accommodations, Defendant restricted Plaintiff's approved leave to only one day per week, contrary to his healthcare provider's recommendation.

86. Defendant further demonstrated bad faith by forcing Plaintiff to relocate to Kingsburg, California, under threat of termination, without considering a meaningful interactive process as an alternative that would have addressed Plaintiff's medical needs while allowing him to remain in Albuquerque.

87. Defendant's failure to engage in the required interactive process constitutes a violation of

the ADA, as this process is essential for determining effective reasonable accommodations to allow individuals with disabilities to perform essential job functions.

88. As a direct and proximate result of Defendant's failure to engage in a meaningful interactive process, Plaintiff suffered emotional distress, mental anguish, deterioration in health, financial instability, and other damages.

89. T-Mobile is liable to Carlos for damages that he suffered as a result of T-Mobile's unlawful actions, including compensatory and punitive damages and front/back pay.

## CONCLUSION

90. The retaliatory actions, selective enforcement of company policies, and failure to engage in a good-faith interactive process by T-Mobile reveal a systemic pattern of discrimination and retaliation against Carlos Maturin. Through actions including unjustified Performance Improvement Plans (PIPs), forced leave conversions, and coerced relocation, T-Mobile created an environment that not only failed to accommodate Carlos's well-documented medical needs but also actively exacerbated his health challenges. These actions constitute clear violations of protections under the Americans with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA).

91. Carlos's eligibility under the ADA has long been established and known to T-Mobile, given his documented history as a two-time cancer survivor with enduring health impacts that substantially limit major life activities. Despite Carlos's resilience and exemplary record—reflected in his consistent high performance and multiple recognitions—T-Mobile's pattern of disregard for his health requirements resulted in escalating punitive actions. By failing to uphold its obligations under both ADA and FMLA, T-Mobile not only breached Carlos's trust but also contravened his federally protected rights to

19

workplace accommodations, non-retaliation, and equitable treatment.

92. The impact of T-Mobile's unlawful actions went beyond unjustified reprimands; they eroded Carlos's dignity as an employee and contributed to severe physical and emotional distress. T-Mobile's refusal to accommodate his established needs, coupled with its attempts to coerce him into an out-of-state relocation under the threat of termination, ultimately forced Carlos into constructive discharge.

93. Through this action, Carlos seeks redress for the substantial harm inflicted by T-Mobile's discriminatory practices and aims to uphold the rights afforded by the ADA and FMLA. In doing so, he seeks not only personal justice but also aims to ensure that T-Mobile— and similarly situated employers—are held accountable, reinforcing protections for all employees entitled to fair treatment, reasonable accommodations, and a workplace free from retaliation.

**WHEREFORE**, Plaintiff Carlos Maturin respectfully requests that this Court enter judgment in his favor and against Defendant T-Mobile USA, Inc., and award the following relief:

A. Enter judgment on all counts in favor of Plaintiff and against Defendants

B. Award Plaintiff compensatory damages for the emotional distress, mental anguish, health deterioration, and financial instability caused by Defendant's discriminatory and retaliatory actions. This includes damages for lost income, career impact, and the loss of enjoyment of life due to the hostile work environment and requests the statutory maximum of up to $300,000.

C. Award Plaintiff punitive damages as allowed under the Americans with Disabilities Act (ADA) to punish Defendant for its willful and malicious conduct,

and to deter similar misconduct in the future. Plaintiff also requests the statutory maximum of up to $300,000.

D.  Award Plaintiff back pay from the date of his constructive discharge, including all lost wages, benefits, and any other compensation he would have earned had he not been forced to resign.

E.  Award Plaintiff front pay in lieu of reinstatement, in an amount sufficient to compensate him for the future loss of earnings resulting from his constructive discharge, up to the point of his anticipated retirement.

F.  Award liquidated damages under the FMLA, equal to the amount of back pay, in recognition of Defendant's willful FMLA violations.

G.  Award Plaintiff pre-judgment and post-judgment interest on all monetary awards, to fully compensate for the time value of lost earnings and benefits from the date of injury until the date of judgment, and post-judgment interest until the judgment is satisfied.

H.  Enter a declaratory judgment that Defendant's actions violated the Americans with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA), affirming Plaintiff's right to fair treatment and reasonable accommodations under these laws.

I.  Grant injunctive relief requiring Defendant to implement policies that protect employees from discrimination, retaliation, and failure to accommodate.

J.  Grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,


Carlos Maturin
439 62nd St NW
Albuquerque, NM 87105-1409
Email: carlosmaturin84@gmail.com
Phone: (505-930-3495)
*Pro Se Plaintiff*

11 / 4 / 2024

22

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained therein is true and correct.  28 U.S.C. Sec. 1746.  18 U.S.C. Sec. 1621.

Executed at _____Albuquerque_____ on __11/0 4__ 20_2_4
                    (Location)              (Date)

_____
                    (Signature)

XE-2    2/78                    - 6 -

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

Carlos Maturin,
**Plaintiff**
**v.**
T-Mobile USA, Inc., a North American Corporation,
**Defendant**

## CIVIL COVER SHEET

### I. Basis of Jurisdiction:
Federal Question: 28 U.S.C. § 1331 (based on claims arising under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq.)

### II. Nature of Suit:
Civil Rights: 445 - Americans with Disabilities - Employment
(ADA and FMLA Employment Discrimination)

### III. Cause of Action:
Defendant unlawfully discriminated against Plaintiff due to his disability, including failure to follow a meaningful interactive process under the ADA, denial of reasonable accommodations, retaliatory conduct under the ADA, and wrongful interference with Plaintiff's FMLA rights, resulting in a hostile work environment, discriminatory practices, and constructive discharge.

### IV. Relief Sought:
As outlined in the Prayer for Relief section, Plaintiff seeks judgment on all counts, compensatory and punitive damages, back and front pay, declaratory judgment, injunctive relief, pre-judgment interest from the date of Plaintiff's damages, post-judgment interest as allowed by law, and any other relief deemed just and proper by the Court.

1