IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARLOS MATURIN,

       Plaintiff,

v.

                                 Civ. No. 24-1125 JCH/SCY

T-MOBILE USA, INC.,

       Defendant.

## MEMORANDUM OPINION AND ORDER

On September 18, 2025, Defendant T-Mobile USA, Inc., ("Defendant" or "T-Mobile") filed a *Motion for Summary Judgment and Memorandum of Law* (Dkt. No. 75). Plaintiff Carlos Maturin ("Plaintiff" or "Maturin") did not file a response in opposition to the motion and the deadline for doing so has passed. *See* D.N.M. Local Rule 7.4(a) ("A response must be served and filed within fourteen (14) calendar days after service of the motion."). The Court, having considered the motion for summary judgment, the evidence, and the relevant law, concludes that the motion should be granted.

### I.      BACKGROUND[1]

---

[1] A party opposing a motion for summary judgment "must file a response containing a short, concise statement of the reasons in opposition to the motion with authorities." D. N.M. Local Rule 56.1(b). The response must also "contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist." *Id.* "Each fact in dispute must be **numbered**, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the **number** of the movant's fact that is disputed." *Id.* "All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." *Id.* Plaintiff failed to file a response to the motion for summary judgment and to cite to the evidence in the record he believes supports his position in accordance with this District's local rules. Consequently, the Court deems the facts set forth in Defendant's motion for summary judgment undisputed when considering the motion for summary judgment. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) ("By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion."); D.N.M. Local Rule 56.1(b). *See also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (stating that court is not required to comb record for previously available evidence to make a party's case for it). The following are the undisputed facts for purposes of resolving the motion for summary judgment.

Carlos Maturin worked for T-Mobile from July 2013 until January 2, 2024. Def.'s Mot. for Summ. J. ("MSJ"), Undisputed Fact ("UF") ¶ 1, Dkt. No. 75. From June 2022 through 2023, he worked at the Menaul Customer Experience Center in Albuquerque, New Mexico, where Katye Minge supervised him. *Id.*, UF ¶ 2. While there, Plaintiff received a promotion to Coach. *Id.*

In May 2022, Maturin was approved for intermittent FMLA leave of up to three days per week for a medical condition. *Id.*, UF ¶ 3. Beginning on June 26, 2022, he was absent for more than eight consecutive workdays. *Id.*, UF ¶ 4. Consistent with T-Mobile practice, his leave was converted to continuous leave status and updated medical certification was requested. *Id.* Maturin provided the certification and remained on approved leave. *Id.* He was later approved for additional medical leave, including other medical or company leave in the fall of 2022. *Id.*, UF ¶ 5.

On October 6, 2022, Maturin participated in a "Formal Discussion" with his supervisors, conducted by phone, regarding workplace comments his supervisors considered inappropriate. *See id.*, UF ¶ 7. Specifically, Plaintiff had referred to one employee as "ignorant" and suggested to another employee that he should worry about his job. *See id.* After the October 6, 2022 discussion, Maturin remained in Good Standing. *Id.*, UF ¶ 8. His pay, title, and benefits were unaffected, and he was eligible for transfers and promotions. *Id.*

In October 2022, Maturin filed an internal complaint alleging discrimination by a supervisor. *Id.*, UF ¶ 9. Employee Relations Partner Janis Hite investigated the matter by interviewing witnesses and reviewing records, and she determined his allegations were unsubstantiated. *See id.*, UF ¶ 10.

In late 2022, Maturin applied for both Manager and Coach positions at T-Mobile's Customer Experience Center in Kingsburg, California. *See id.*, UF ¶ 11. Ryan Bowman interviewed him. *Id.*, UF ¶ 12. Based on his interview and positive feedback from Albuquerque,

Bowman recommended him for the Coach position but not for the Manager position. *See* Defs.' MSJ, UF ¶ 12, Dkt. No. 75. When Bowman selected Maturin for the Coach position, he based his decision solely on Maturin's application and interview. *Id.*, UF ¶ 14. Bowman did not know about Maturin's medical condition, his leave history, or any internal complaints made in Albuquerque. *Id.* Maturin accepted the offer for the Coach position in Kingsburg. *Id.*, UF ¶ 13. No one required him to relocate. *Id.*

While employed at Kingsburg, Plaintiff filed an EEOC charge in April 2023 and an amended charge in May 2023. Def.'s MSJ, UF ¶ 20, Dkt. No. 75; Def.'s Ex. 7, Dkt. No. 75-7. The April 6, 2023 Charge alleged discrimination and retaliation against him based on his disability in violation of the Americans with Disabilities Act of 1990. Def.'s Ex. 7 at 1, Dkt. No. 75-7. He asserted that on or about July 11, 2022, a supervisor forced him out of the premises because he went outside the parameters of his approved intermittent leave and could not come back until he was approved for continuous leave, and that multiple times he was forced to visit his doctor to get disability paperwork. *Id.* In the May 3, 2023 Amended Charge, Maturin added that he was denied the Team Manager position twice between November 2022 and March 2023 because of his disability. *See id.* at 3-4.

While assigned to the Kingsburg Center as a Coach in 2023, he was scheduled to be realigned to Brian Clark's team, but before that realignment took place, he went on leave and did not return. *Id.*, UF ¶ 15. On January 2, 2024, Maturin sent his Kingsburg supervisor, Brian Clark, an email stating that he was resigning effective immediately. *Id.*, UF ¶ 17; Def.'s Ex. 1, Dkt. No. 75-6. Clark understood this to be Plaintiff's decision and did not tell him that his job was ending or that he had to resign. Def.'s MSJ, UF ¶ 18, Dkt. No. 75. T-Mobile accepted Maturin's voluntary resignation. *Id.*, UF ¶¶ 18-19. T-Mobile did not terminate his employment. *Id.*, UF ¶ 19.

Neither the Charge nor Amended Charge alleged constructive discharge. *See* Def.'s MSJ, UF ¶ 20; Def.'s Ex. 7, Dkt. No. 75-7. On August 6, 2024, the U.S. Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a right-to-sue letter. Def.'s Ex. 8, Dkt. No. 75-8.

Maturin filed a seven-count complaint against T-Mobile on November 4, 2024. Compl, Dkt. No. 1. He alleges five claims for violations of the Americans with Disabilities Act ("ADA"): disability discrimination (Count I), retaliation (Count II), hostile work environment (Count III), constructive discharge (Count VI), and failure to engage in the interactive process (Count VII). *Id.* ¶¶ 42-60, 73-89. Maturin additionally asserts two Family and Medical Leave Act ("FMLA") claims: interference (Count IV) and retaliation (Count V). *Id.* ¶¶ 61-72.

## II.    SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets this burden, the nonmoving party must "come forward with specific facts showing" that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). Only disputes of fact that might affect the outcome of the case will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## III.    ANALYSIS

### A. ADA discrimination and accommodation claims (Counts I and VII)

Plaintiff asserts in Count I that Defendant discriminated against him by (1) failing to honor his intermittent leave request and converting it to continuous leave without his consent; (2) failing to engage in a good-faith interactive process to explore reasonable accommodations; and (3) denying additional accommodations he requested. Compl. ¶¶ 43-48, Dkt. No. 1. In Count VII, Plaintiff alleges that Defendant failed to engage in a good-faith interactive process, instead unilaterally converting his approved intermittent leave to continuous leave; restricting his approved leave to only one day per week; and forcing him to relocate in Kingsburg. *Id.* ¶¶ 79-89. Defendant argues that it is entitled to summary judgment on his ADA discrimination and accommodation claims because T-Mobile granted him the leave he requested and did not deny any accommodation.

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to … the hiring, advancement, or discharge of employees … and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Unlawful discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A).

To succeed on an ADA discrimination claim, a plaintiff must prove that he (1) is disabled under the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential job functions of the job held or desired; and (3) suffered an adverse employment action by an employer or prospective employer because of that disability. *Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc.*, 144 F.4th 1212, 1215 (quoting *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011)). To demonstrate an adverse employment action, the plaintiff

must show he experienced some harm respecting an identifiable term or condition of employment as a result of the action. *Id.* at 1216. In other words, the employer's action must have left the plaintiff worse off, but not necessarily significantly so. *Id.* (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 349 (2024)). An employer's failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability may constitute prohibited discrimination under the ADA. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 967 (10th Cir. 2002). A request for medical leave may qualify as a reasonable ADA accommodation. *See id.*

Defendant argues that Plaintiff cannot succeed on his ADA discrimination because he has not produced evidence that he was ever denied an accommodation he requested. "When alleging a failure to accommodate, a plaintiff carries the burden of demonstrating the existence of a facially reasonable accommodation." *Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1264 (10th Cir. 2009). Defendant produced evidence that it approved Plaintiff's requests for leave based on his medical condition. Plaintiff failed to produce evidence in response to the summary judgment motion to show that he requested a reasonable accommodation that T-Mobile denied or that T-Mobile refused to engage in an interactive process. Nor has he provided evidence that one or more of his leave requests were not approved. Defendant is therefore entitled to summary judgment on Counts I and VII.

### B. Retaliation in violation of the ADA (Count II) and FMLA (Count V) and constructive discharge (Count VI)

Plaintiff asserts in his complaint that, following his objections to the conversion of his leave, T-Mobile issued a retaliatory Performance Improvement Plan ("PIP") against him, denied his requests for additional accommodation, forced his relocation under threat of termination, and constructively discharged him in violation of the ADA and FMLA. Defendant argues that

Plaintiff's retaliation claims fail because the only disciplinary action was a minor counseling that carried no consequences, and he voluntarily transferred to Kingsburg.

"The FMLA makes it unlawful for an employer to retaliate against an employee for exercising her rights to FMLA leave." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (citing 29 U.S.C. § 2615(a)). To state a prima facie case of retaliation, the plaintiff must show that (1) he engaged in protected activity, (2) his employer took an action that a reasonable employee would find materially adverse; and (3) there is a causal connection between the protected activity and the adverse action. *Id.* at 1193; *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). Defendant contends that Plaintiff cannot satisfy the second and third elements.

As for the PIP, the Court agrees with Defendant that it does not amount to a materially adverse action. The undisputed evidence before the Court is that Maturin had a "Formal Discussion" with his supervisors after he referred to one employee as "ignorant" and suggested to another employee that he should worry about his job. But following the October 6, 2022 discussion, Maturin remained in Good Standing; his pay, title, and benefits were unaffected; and he was eligible for transfers and promotions. Furthermore, as discussed *supra*, Defendant produced evidence that it approved Plaintiff's requests for leave and Plaintiff failed to produce admissible evidence that he requested reasonable accommodations that T-Mobile denied. It is further undisputed on this record that Plaintiff voluntarily transferred to Kingsburg and voluntarily resigned. Plaintiff brought forth no evidence to show such intolerable working conditions that a reasonable person would feel compelled to resign to sustain a constructive discharge claim. *See Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1135 (10th Cir. 2004) ("A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so

7

intolerable that a reasonable person in the employee's position would feel forced to resign. Working conditions must be so severe that the plaintiff simply had no choice but to quit. In contrast, a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged.") (internal citations omitted). None of these actions therefore amount to a materially adverse action that can sustain a retaliation claim.

A failure to promote may constitute a materially adverse action. Here, however, it is undisputed that the supervisor in Kingsburg who hired Plaintiff to the Coach position, but not the Manager position, had no knowledge that Plaintiff engaged in protected activity. Plaintiff thus cannot establish that T-Mobile's failure to promote him to the manager position was connected to his protected activity. *Cf. Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019) ("a plaintiff who seeks to show causation in this manner still must present evidence that the decisionmakers *knew* of the protected conduct"); *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) (explaining that to show requisite causal connection between his protected conduct and termination, plaintiff had to "first come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire him had knowledge of his protected activity").

Moreover, as to Plaintiff's constructive discharge claim, Defendant additionally asserts that Plaintiff cannot bring the claim because he never presented it to the EEOC. A plaintiff must timely file an administrative charge of discrimination with the EEOC before filing suit under the ADA. *See McDade v. Weston County Hospital District*, No. 24-8031, 2025 WL 415481, at *4 (10th Cir. Feb. 6, 2025). Discrete acts such as termination constitute a separate actionable unlawful employment practice that must be administratively exhausted before bringing a lawsuit. *See Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003). Plaintiff filed a charge and amended charge with the EEOC in April and May 2023. There is no evidence before the Court that Plaintiff

8

filed a new or amended charge after he left T-Mobile's employment in January 2024. Consequently, Plaintiff failed to exhaust his administrative remedies as to his constructive discharge claim, so Defendant is entitled to summary judgment on Count VI for this alternative reason. *Cf. Chapman v. Carmike Cinemas*, 307 F. App'x 164, 174 (10th Cir. Jan. 12, 2009) (explaining that, because plaintiff did not file an administrative charge arising from her constructive discharge, defendant was entitled to summary judgment because she failed to exhaust her administrative remedies).

For all the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's retaliation and constructive discharge claims.

### C.  Hostile work environment claim (Count III)

According to Plaintiff's complaint, he was subject to a hostile work environment when Defendant consistently disregarded his approved accommodations and altered his leave status without consent, issued a retaliatory PIP and denied additional accommodations, and imposed a forced relocation. Compl. ¶ 57, Dkt. No. 1. The summary judgment evidence, however, does not support the allegations or satisfy the necessary elements for a hostile work environment claim.

To succeed on an ADA hostile work environment claim, the plaintiff must show the workplace "was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. FedEx Corporate Services*, 849 F.3d 889, 897 (10th Cir. 2017) (quoting *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998)). Defendant asserts in its summary judgment motion that Plaintiff has no evidence of severe or pervasive harassment necessary to sustain a hostile work environment claim. The Court agrees. The record does not show a workplace permeated with intimidation, ridicule, and insult. Nor is

there evidence of severe or pervasive misconduct that would alter the victim's employment and create an abusive working environment. Rather, it is undisputed that, after Plaintiff referred to one employee as "ignorant" and suggested to another employee that he should worry about his job, T-Mobile engaged in a "Formal Discussion" with Plaintiff, after which he remained in Good Standing; his pay, title, and benefits were unaffected; and he was eligible for transfers and promotions. There is no evidence that T-Mobile denied Plaintiff any accommodation requests or forced him to relocate. Consequently, T-Mobile is entitled to summary judgment on Plaintiff's hostile work environment claim.

### D. FMLA interference (Count IV)

Plaintiff asserts that T-Mobile interfered with his FMLA rights by unlawfully converting his intermittent leave to continuous leave without his consent, failing to account for his approved leave days, and enforcing discriminatory attendance policies. Compl. ¶ 64, Dkt. No. 1. Defendant requests summary judgment on Count IV because T-Mobile never denied Plaintiff a request for leave or penalized him for taking leave.

The FMLA provides eligible employees with 12 weeks of leave, including taking leave intermittently when medically necessary, during any 12-month period if a "serious health condition" prevents such an employee from performing the functions of his job. *See* 29 U.S.C. § 2612(a)(1)(D), (b)(1). "The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided under the FMLA." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012) (citing 29 U.S.C. § 2615(a)(1)). To succeed on an FMLA interference claim, "an employee must show that (1) he was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights."

*Id.* A plaintiff may satisfy the second element by showing that he was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).

Defendant has produced evidence that it approved Plaintiff's requests for FMLA leave, that Plaintiff remained in good standing with the company after taking leave, and that his pay, title, and benefits were unaffected. Plaintiff failed to produce evidence to establish the second element necessary to succeed on a an FMLA interference claim – that T-Mobile took an adverse action that interfered with Plaintiff's right to take FMLA leave. Accordingly, Defendant is entitled to summary judgment on Count IV.

**IT IS THEREFORE ORDERED** that Defendant's *Motion for Summary Judgment and Memorandum of Law* (**Dkt. No. 75**) is **GRANTED**. Defendant is entitled to summary judgment on all claims against it and all Plaintiff's claims are **DISMISSED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE